**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:18-cv-03133-RBJ

OTTER PRODUCTS, LLC, et al.,

    Plaintiffs,

v.

JESTIBO, LLC, et al.,

    Defendants.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

Plaintiffs Otter Products, LLC and TreeFrog Developments, Inc. (collectively, "Plaintiffs") submit this opposition to Defendants Jestibo, LLC and Rami K. Merhab's ("Defendants") Motion to Dismiss Plaintiffs' Amended Complaint.

**I.    INTRODUCTION**

Defendants seek to dismiss one of Plaintiffs' eight causes of action—tortious interference with contract or business relations. Defendants' Motion should be denied because: (1) Plaintiffs have sufficiently pled each element of their tortious interference claim, and (2) Defendants have failed to prove the affirmative defense of the competitor's privilege bars Plaintiffs' claim. Further, it must be noted that another Court in this District recently evaluated this very claim and held that Plaintiffs' allegations stated a claim for tortious interference. *Otter Prods., LLC v. Wang*, No. 18-cv-03198, 2019 U.S. Dist. LEXIS 52916, *15-16 (D. Colo. March 28, 2019). The same result should be reached here.

1

## II.   STATEMENT OF RELEVANT FACTS

### A.  Plaintiffs And The Online Marketplaces.

Plaintiffs manufacture, market, and sell electronics accessories and other products under the OtterBox® and LifeProof® brands (collectively, "Otter Products") that are protected by numerous registered trademarks (collectively, the "Otter Trademarks"). (Doc. 28 at ¶¶ 9-16.)

Plaintiffs have been harmed by the anonymous, unauthorized sale of poor quality products bearing the Otter Trademarks on Amazon and other marketplaces. (*Id.* at ¶¶ 36, 182-188.) These sales create consumer confusion because consumers believe they are purchasing genuine products but are instead receiving counterfeit, defective, or damaged goods. (*Id.* at ¶¶ 23-35.) These sales also harm Plaintiffs' reputation and goodwill, as consumers who receive these poor quality products blame Plaintiffs and post influential negative reviews about them. *Id*. (*Id.* at ¶¶ 31-35, 141, 145-46.)

### B.  Plaintiffs Have Implemented Substantial Quality Controls And Restricted The Distribution Of Their Products.

Faced with the threats to their brands and consumer goodwill posed by online marketplaces, Plaintiffs have placed restrictions on the distribution of their products and implemented a robust quality control program across all of their authorized channels of distribution. (Doc. 28 at ¶ 45.) Plaintiffs require all of their Authorized Sellers to follow these quality controls and adhere to these requirements. (*Id.* at ¶¶ 53, 56-57, 59-61, 64-77, 81-84.)

As part of this program, Plaintiffs require their Authorized Sellers to comply with certain restrictions regarding the sale of their products. Plaintiffs' agreements with their Authorized Sellers prohibit them from selling Otter Products to any unauthorized resellers, like Defendants, who intend to resell the products. (Doc. 28 at ¶¶ 50-52, 176.) The purpose of this restriction is to ensure that Otter Products are purchased by end-user customers only from Plaintiffs themselves or

from Authorized Sellers who are subject to and abide by Plaintiffs' quality controls – which, in turn, reduces consumer confusion, minimizes the likelihood that consumers receive poor quality Otter Products, and protects the value of Plaintiffs' brands. (*Id.* at ¶¶ 46-47 50, 54, 64-66.)

### C. Defendants Are Acquiring and Selling Non-Genuine Otter Products.

Defendants have sold, and continue to sell, a high volume of Otter Products through an anonymous storefront on Amazon called "Get Smart Accessories." (Doc. 28 at ¶ 92.) Defendants are not Authorized Sellers and are selling products outside of Plaintiffs' quality controls and without Plaintiffs' warranty. (*Id.* at ¶¶ 94-95.) For the reasons set forth in the Complaint, the products Defendants sell are not genuine Otter Products and are materially different from genuine Otter Products.[1] (*Id.* at ¶¶ 142-144, 152-153, 200, 257, 307.)

### D. Defendants' Actions Tortiously Interfere With Plaintiffs' Agreements With Their Authorized Sellers.

As set forth above, Plaintiffs' agreements with their Authorized Sellers prohibit them from selling Otter Products to unauthorized resellers, like Defendants, who intend to resell the products. (Doc. 28 at ¶¶ 50-52, 176.) Defendants have known of this prohibition since at least November 5, 2018, when Plaintiffs' counsel sent the first of three cease-and-desist letters to Defendants prior to filing this action. (*Id.* at ¶¶ 162, 164, 166, 177.) These letters provided clear notice to Defendants that Plaintiffs' agreements with their Authorized Sellers prohibit them from selling Otter Products to unauthorized resellers such as Defendants. (*Id.* at ¶¶ 176-77, 347-48.) Defendants were also notified that, by purchasing Otter Products from Authorized Sellers for the purpose of resale, they

---

[1] Defendants repeatedly assert that they sell "genuine" Otter Products and even proclaim that the Amended Complaint concedes this fact. (Doc. 35 at 3.) This representation is **false**. The Amended Complaint repeatedly alleges that the products Defendants sell are **not** "genuine" Otter Products and these allegations are uncontested. (Doc. 28 at ¶¶ 101-102, 126, 141-145, 151-154, 170-174.)

were causing a breach of the agreements between Plaintiffs and their Authorized Sellers and interfering with Plaintiffs' agreements and business relationships. (*Id.* at ¶ 178.)  Despite this knowledge, Defendants have continued to acquire products from Authorized Sellers and willfully and knowingly induce them to breach their agreements with Plaintiffs. (*Id.* at ¶¶ 180-181.)

### III.   LAW AND ARGUMENT

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all well-pled facts in the complaint as true and draw all reasonable inferences from those facts "in the light most favorable to the plaintiff." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).  For tortious interference claims, "subjective questions of knowledge, state of mind and intent" are "best reserved for the trier of fact." *United States v. Excellair, Inc.*, 637 F. Supp. 1377, 1393 (D. Colo. 1986).

#### A.   Plaintiffs Have Sufficiently Pled Their Claim For Tortious Interference.

To state a claim for tortious interference with contract or business relations, a plaintiff must allege that: (1) it had a valid contract or reasonable prospect of having a business relationship; (2) the defendant knew of the contract or prospective relationship; (3) the defendant intended to induce a breach of the contract or to interfere with the relationship; (4) the defendant engaged in conduct that produced a breach or prevented the plaintiff from acquiring or continuing a business relationship; (5) the interference was improper; and (6) the plaintiff suffered damages as a result. *Zimmer Spine, Inc. v. EBI, LLC*, No. 10-cv-03112, 2011 U.S. Dist. LEXIS 103629, *6-7 (D. Colo. Sept. 14, 2011).  Plaintiffs have sufficiently pled each of these elements.[2]

---

[2] Defendants assert that Plaintiffs conjured up a pretextual tortious interference claim because Defendants' sale of "genuine" products is not tortious. (Doc. 35 at 6.)  This assertion could not be further from the truth.  Plaintiffs have asserted trademark infringement and other claims against Defendants based on their advertisement and sale of products

4

### 1. Plaintiffs Have Alleged The Existence Of Valid Contracts.

Plaintiffs have adequately alleged the existence of a contract by pleading that they have agreements with their Authorized Sellers that prohibit them from selling Otter Products to unauthorized resellers such as Defendants. (Doc. 28 at ¶¶ 50-52, 342-43, 352.). Defendants do not dispute the existence of a valid contract.

To the extent Defendants contend Plaintiffs' have not sufficiently identified a specific contract, that argument fails because Plaintiffs have identified a specific class of contract – namely Plaintiffs' agreements with their Authorized Sellers. *See Bus. Payment Sys. v. Bus. Payment Sys.– Rock Mt., LLC*, No. 12-cv-01695, 2013 U.S. Dist. LEXIS 202558, *25-26 (D. Colo. Feb. 20, 2013). In *Bus Payment Sys.*, the court rejected defendant's argument that plaintiff's claim was deficient because plaintiff had "failed to identify a contract between itself and a third party." *Id.* The court concluded that plaintiff had sufficiently stated a claim by alleging that it had "valid contracts with its merchants and business partners" and that defendants "interfered with and caused breaches and disruptions of Plaintiff's contracts" by misappropriating merchant accounts and establishing direct relationships with those merchants. *Id.* at 25-26.

Because Plaintiffs have identified a class of contract that Defendants have interfered with, they have sufficiently stated a claim. *See id.*; *Swingless Golf Club Corp. v. Taylor*, No. C 08-05574, 2009 U.S. Dist. LEXIS 57654, at *4-5 (N.D. Cal. July 7, 2009) (denying motion to dismiss tortious interference claim because "[a]lthough the complaint does not point to any single contract, it does

---

bearing the Otter Trademarks. (*See* Doc. 28.) Defendants have not moved to dismiss those claims, nor contested any of those allegations. Thus, Defendants' contention that Plaintiffs had to conjure up a tortious interference claim in order to bring this case is simply wrong.

5

allege a specific class of existing contracts that defendants purportedly induced the breach thereof" and "which contracts were interfered with . . . will be readily obtainable in discovery.").

### 2. Plaintiffs Have Alleged That Defendants Knew Of Plaintiffs' Contracts And Intended To Induce Authorized Sellers To Breach The Contracts.

A plaintiff can satisfy the "knowledge" element by alleging that the defendant had either actual knowledge or "knowledge of facts which would lead [the defendant] to inquire as to the existence of the contract." *Ramirez v. GEO Grp., Inc.*, 655 F. Supp. 2d 1170, 1190 (D. Colo. 2009). A defendant's intent to induce the breach of a contract can be inferred from knowledge. This Court has inferred intent from evidence that the defendant "'knows his or her acts or words are likely to bring about that result,' namely, to bring about the breach or non-performance of the contract." *Mueller v. Swift*, No. 15-cv-1974, 2017 U.S. Dist. LEXIS 83378, *19 (D. Colo. May 31, 2017).

Here, Plaintiffs have sufficiently pled the "knowledge" and "intent" elements. Plaintiffs allege that Defendants knew Plaintiffs' agreements with their Authorized Sellers prohibit them from selling Otter Products to unauthorized resellers. (Doc. 28 at ¶¶ 162, 164, 166, 176-79, 342-43, 351-52.) It can be inferred from Defendants' knowledge about Plaintiffs' agreements and their continued purchases of Otter Products that Defendants intended to induce Authorized Sellers to breach their agreements with Plaintiffs. *See Mueller*, 2017 U.S. Dist. LEXIS 83378, at *19.

Unable to find any case from this District or the Tenth Circuit to support their argument, Defendants cite three inapposite and unpersuasive cases from New York and New Jersey. In *John Paul Mitchell Sys. v. Pete-N-Larry's, Inc.*, 862 F. Supp. 1020 (W.D.N.Y. 1994), the court dismissed plaintiff's claim at the summary judgment stage because defendants submitted affidavits stating that they had never had any contact with plaintiff's authorized distributors or sellers. *Id.* at 1029. Here, no such evidence is before the Court. Rather, the unrefuted allegations in the

Complaint establish that Defendants acquired products from Plaintiffs' Authorized Sellers. (Doc. 28 at ¶¶ 175, 180, 346, 352.)

*John Paul Mitchell Sys. v. Quality King Distrib., Inc.*, 106 F. Supp. 2d 462 (D.N.Y. 2000) also does not support Defendants' position. There, the court did not reach the issue of whether defendants' knowledge of plaintiff's distribution policies satisfied the knowledge element. *Id*. at 476 (stating that plaintiff will likely be able to prove that defendant knew about plaintiff's distribution scheme but finding it unnecessary to determine whether defendant had knowledge of the contract). Regardless, any findings or conclusions the court reached were made ***after an evidentiary hearing*** where the court received and weighed the evidence regarding defendants' knowledge. *Id.* Here, there has been no hearing and the Court must accept the allegations in the Complaint – including those regarding Defendants' knowledge – as true. *Teigen*, 511 F.3d at 1078.

Last, Defendants' reliance on *Matrix Essentials v. Cosmetic Gallery*, 870 F. Supp. 1237 (D.N.J. 1994) is misplaced because that case was decided ***after a trial***. The court found for defendants on plaintiff's tortious interference claim because, after considering all of the evidence, there was insufficient evidence establishing that defendants knew of the restrictions in plaintiff's contracts. *Id*. at 1247. Here, Plaintiffs' allegations – which must be accepted as true – establish that Defendants knew of the restrictions in Plaintiffs' agreements with their Authorized Sellers.[3] (Doc. 28 at ¶¶ 177-79, 347-48.) Thus, the allegations in the Complaint adequately state a claim.

---

[3] Even if Defendants contend they did not have actual knowledge of the restrictions in Plaintiffs' agreements (a fact refuted by the allegations in the Complaint), they admit that they had "general knowledge of Plaintiffs' stated distribution scheme," which should have led them to inquire further as to whether they were causing a breach of Plaintiffs' agreements. *See Ramirez*, 655 F. Supp. 2d at 1190.

### 3. Plaintiffs Have Alleged That Defendants Engaged In Conduct That Caused Authorized Sellers To Breach Their Contracts With Plaintiffs.

Plaintiffs have also alleged that Defendants' conduct caused a breach of contract. By purchasing products from Plaintiffs' Authorized Sellers for purposes of resale, Defendants have caused Plaintiffs' Authorized Sellers to breach their agreements with Otter. (Doc. 28 at ¶¶ 177-181, 349-352.) Defendants do not contest this point.

### 4. Plaintiffs Have Alleged That Defendants' Conduct Was Improper.

Plaintiffs have established Defendants' interference was improper. To determine whether a defendant's interference with a contract or business relationship is improper, courts examine several factors: (a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the plaintiff's interests interfered with; (d) the defendant's interests in interfering; (e) the social interests in protecting the defendant's freedom of action and plaintiff's contract; (f) the proximity of the defendant's conduct to the interference; and (g) the relations between the parties. *Nobody in Particular Presents, Inc. v. Clear Channel Communs., Inc.*, 311 F. Supp. 2d 1048, 1118-19 (D. Colo. 2004) (citing Restatement (Second) of Torts § 767). The defendant's motive by itself "can be a determinative factor" in finding that a defendant improperly interfered with a contract or business relationship. *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co.*, 885 F.2d 683, 691 (10th Cir. 1989).

Here, Plaintiffs have alleged that Defendants' conduct was improper because Defendants acted with a wrongful motive. Specifically, Plaintiffs allege that: (1) Defendants knew that Plaintiffs' agreements with Authorized Sellers prohibit them from selling Otter Products to any unauthorized reseller who intends to resell the products; (2) despite this knowledge, Defendants willfully and knowingly induced unknown Authorized Sellers to breach their agreements with

8

Plaintiffs so that Defendants could purchase Otter Products for the purpose of reselling the products; (3) Defendants actions unlawfully infringe upon and materially damage the value of the Otter Trademarks; and (4) by continuing to purchase Otter Products from Authorized Sellers for the purpose of resale, Defendants acted with a wrongful purpose and employed wrongful means. (Doc. 28 at ¶¶ 50-52, 175-75, 181, 349-351.) These allegations, alone, establish that Defendants' interference was improper.

In addition, the remaining factors also support a finding that Defendants acted with a wrongful purpose. Plaintiffs have strong interests in protecting their contracts with Authorized Sellers because those contracts allow Plaintiffs to protect the quality and reliability of their products, protect their reputation, and ensure that their quality control and customer service requirements are followed. (*Id.* at ¶¶ 45-50, 54, 64-69, 88); *Alexander & Alexander, Inc. v. Frank B. Hall & Co.*, No. 88-A-1621, 1990 U.S. Dist. LEXIS 21024, *36 (D. Colo. Jan. 31, 1990) ("Where a contract has been formed between a party and its client and the actor induces its breach, there is a 'greater definiteness of [the party's] expectancy and his stronger claim to security for it' and a 'lesser social utility of the actor's conduct.'"). There are also social interests in protecting contractual rights and ensuring that only quality, genuine products enter the market. Last, Defendants interfere directly with Plaintiffs' contracts by purchasing Otter Products directly from Authorized Sellers. (*Id.* at ¶¶ 175, 180, 181, 346, 350); *Alexander*, 1990 U.S. Dist. LEXIS 21024, at *34-35 (finding that defendant's inducement of clients to terminate their relationships with plaintiff "was the direct cause of that termination"). As such, Plaintiffs' have sufficiently alleged Defendants' interference was improper.

### 5. Plaintiffs Have Alleged That Defendants' Conduct Caused Plaintiffs Harm.

Defendants wrongly contend that Plaintiffs have failed to state a claim because they have not alleged they suffered any actual damages resulting from Defendants' tortious interference. (Doc. 35 at 7-8.) To the contrary, Plaintiffs have alleged that Defendants' unauthorized sale of products bearing the Otter Trademarks has caused, and will continue to cause, Plaintiffs to suffer significant monetary and non-monetary harm – including damage to their brands, reputation, goodwill, and intellectual property. (Doc. 28 at ¶¶ 31-32, 36-43, 104-119, 183-185, 351, 353-354.) Thus, Plaintiffs have clearly alleged they suffered damages.

To the extent Defendants contend the Plaintiffs' claim fails because they have not alleged monetary harm, their argument fails. Plaintiffs have alleged they have suffered monetary harm as a result of Defendants' actions. (Doc. at ¶ 184 ("Plaintiffs have suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions.").) As such, Defendants' argument has no merit.

Moreover, Plaintiffs are not required to show monetary damage to prevail on their claim. A plaintiff can recover reputational and other non-monetary harm through a claim for tortious interference. *See Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1237 (10th Cir. 2006) (holding that damages for tortious interference under the Restatement can include "harm to reputation"); *Dawson v. Litton Loan Serv., LP*, No. 12-cv-01334, 2013 U.S. Dist. LEXIS 49228, *20 n.3 (D. Colo. March 28, 2013) (holding that plaintiffs stated claim for tortious interference by alleging both pecuniary harm and emotional distress); RESTATEMENT (SECOND) OF TORTS § 774A (1979) (explaining that a defendant that is liable for tortious interference is liable for damages for

pecuniary loss, consequential losses, "**and** . . . emotional distress **or actual harm to reputation**, if they are reasonably to be expected to result from the interference." (emphasis added)).

The cases Defendants cite are inapposite. The *Rywalt* case merely found that the party's interference claim failed because "no damage" was shown from the interference. *Rywalt v. Writer Corp.*, 34 Colo. App. 334, 3337 (Colo. App. 1974). Here, Plaintiffs have alleged they suffered damages – both monetary and non-monetary. (Doc. 28 at ¶¶ 183-185, 353.)

The *H.L. Hayden*, *Landmark Development*, and *Graham Webb* cases are also not persuasive because they were all decided *at the summary judgment stage* after the courts received and evaluated evidence on the plaintiffs' alleged damages. *See H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1024 (2d Cir. 1988) (finding plaintiff failed to present evidence to establish damages); *Landmark Development Corp. v. Chambers Corp.*, 752 F.2d 369, 373 (9th Cir. 1985) (granting summary judgment because plaintiff failed to present evidence to support its conclusory and speculative assertion that defendants disrupted its sales); *Graham Webb Int'l Ltd. P'ship v. Emporium Drug Mart, Inc.*, 916 F.Supp. 909, 918 (E.D. Ark. 1995) (finding that there was no evidence "in the record" to support plaintiff's claim for lost sales).[4] Here, there is no evidence in the record; only the allegations in the Complaint. There, Plaintiffs allege that they have suffered monetary and non-monetary damages as a result of Defendants' actions. (Doc. 28 at ¶¶ 183-185, 353.) These allegations are supported by extensive factual allegations explaining how Defendants' sales of diverted products causes harm to Plaintiffs' brands and reputation because it causes customers to lose confidence in the OtterBox and LifeProof brands and post

---

[4] Even if any of these cases could be interpreted as requiring a plaintiff to allege monetary harm at the pleading stage, they still would not impact this case because Plaintiffs have alleged they suffered monetary harm as a result of Defendants' actions. (Doc. at ¶ 184.)
11

negative reviews about OtterBox and LifeProof products, which, in turn, results in lost sales. (Doc. 28 at ¶¶ 31-32, 36-43, 104-119, 130, 132, 183.)  Accepting these allegations as true, as the Court must, Plaintiffs have sufficiently pled Defendants' actions caused them damage.

### B.     The "Competitor's Privilege" Affirmative Defense Does Not Bar Plaintiffs' Claim For Tortious Interference.

Under Colorado law, a defendant can raise the competitor's privilege as an affirmative defense to a claim of tortious interference. *Zimmer*, 2011 U.S. Dist. LEXIS 103629, at *15. Because it is an affirmative defense, it "must be asserted and proven by the defendant." *Id*.  A motion to dismiss based on the competitor's privilege should be granted only if the defendants have demonstrated that it is clear from the face of the complaint that the privilege applies and all elements of the privilege are met. *See Nutritional Biomimetics, LLC v. Empirical Labs Inc*, No. 16-cv-01162, 2018 U.S. Dist. LEXIS 42715, *6-7 (D. Colo. March 15, 2018); *Carskadon v. Diva Int'l, Inc.*, No. 12-cv-01886, 2014 U.S. Dist. LEXIS 177702, *29 (D. Colo. Feb. 26, 2014).

Here, the privilege does not apply to the type of agreements between Plaintiffs and Authorized Sellers or to the type of interference with the agreements that Defendants caused.  Even if the privilege did apply, Defendants' have not met their burden of proving the defense.

#### 1.    The Competitor's Privilege Does Not Apply To Plaintiffs' Tortious Interference Claim Against Defendants.

Section 768 of the Restatement, which in Colorado is referred to as the competitor's privilege, permits certain types of tortious interference on the basis of competition. Specifically, "[o]ne who intentionally causes a third person **not to enter into a prospective contractual relation** with another who is his competitor **or not to continue an existing contract terminable at will** does not interfere improperly with the other's relation if" certain conditions are met.

RESTATEMENT (SECOND) OF TORTS § 768 (emphasis added). By its plain text, the privilege applies only to (1) interference with a prospective contractual relation or (2) conduct that induces the termination of contracts that are terminable-at-will.

Here, neither of these scenarios is present. Plaintiffs allege that they have existing contractual relations with their Authorized Sellers, not prospective ones. (Doc. 28 at ¶¶ 343, 352.) Plaintiffs also did not allege that Defendants caused Authorized Sellers "not to continue an existing contract terminable at will." Instead, Plaintiffs have alleged that Defendants interfered with Plaintiffs' **existing** agreements with the Authorized Sellers by inducing Authorized Sellers to **breach** their agreements and sell products to Defendants. (*Id.* at ¶ 349.) Plaintiffs do not allege that Defendants induced Authorized Sellers to terminate their agreements with Plaintiffs. As such, the privilege does not apply in this case.

### 2. Even If The Competitor's Privilege Applied, The Allegations of The Complaint Establish That Defendants Employed "Wrongful Means."

The competitor's privilege provides that "a defendant does not engage in improper conduct, so as to be liable for intentional interference, if: '(1) it concerns a matter of competition between the defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does not amount to an unlawful restraint of trade; and (4) the defendant's purpose is, at least in part, to advance its own interest.'" *Zimmer*, 2011 U.S. Dist. LEXIS 103629, at *15-16.

In regard to the "wrongful means" element, Defendants must establish it is clear from the face of the complaint that defendant did not use "wrongful means" in interfering with a contract. *See id.* at *15-16. "Wrongful means" encompasses a large swath of conduct, ranging from physical violence, fraud, civil suits, and criminal prosecutions, to deceit and limited economic pressure. *Aza Adult Day Care v. Relax Adult Care*, No. 2017 CV32215, 2018 Colo. Dist. LEXIS 1318, *31

(Colo. Dist. Ct. Sept. 7, 2018)). The Tenth Circuit has held that engaging in actions to undermine a party's distribution channels constitutes such malicious and wrongful conduct. *Australian Gold*, 436 F.3d at 1236-37 (defendants' acquisition of products from plaintiff's distributors for purposes of reselling them when defendants knew such sales to defendants were not permitted under plaintiff's agreements with its distributors constituted malicious and wrongful conduct).

Here, Defendants cannot meet their burden of establishing that they did not employ wrongful means. Plaintiffs allege that Defendants used wrongful means in interfering with Plaintiffs' agreements:

> 351. Defendants acted with a wrongful purpose and employed wrongful means by acquiring Otter Products from Authorized Sellers for the purpose of reselling those products on the Internet in violation of the Otter Rules and Plaintiffs' agreements with its Authorized Sellers. Specifically, Defendants induced Authorized Sellers to breach their agreements with Plaintiffs so that Defendants could unlawfully infringe upon and materially damage the value of the Otter Trademarks by reselling the products they obtained from Authorized Sellers on the Internet.

(Doc. 28 at ¶ 351.)[5] Indeed, Defendants knew that Authorized Sellers would be breaching their agreements with Plaintiffs if they sold products to Defendants for the purpose of resale. (*Id.* at ¶¶ 347-48.) Yet, Defendants still willfully and intentionally induced Authorized Sellers to breach their agreements with Plaintiffs so they could undermine Plaintiffs' distribution channels, illegally sell infringing products bearing the Otter Trademarks, and harm Plaintiffs. (*Id.* at ¶¶ 349-351, 354.) Such allegations are sufficient to support Plaintiffs' tortious interference claim. *See Australian Gold*, 436 F.3d at 1236-37.

---

[5] Defendants mischaracterize Plaintiffs' allegation by contending that the only "wrongful purpose" Plaintiffs allege is that Defendants are purchasing Otter Products to resell them "without Plaintiffs' approval." (Doc. 35 at 7.) This is wrong, as demonstrated above.

## IV. CONCLUSION

For all of these reasons, this Court should deny Defendants' motion to dismiss.

Dated this 29th day of April 2019.　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*s/ Tyler B. Pensyl*
　　　　　　　　　　　　　　　　　　　　　　William D. Kloss, Jr. (Ohio Bar No. 0040854)
　　　　　　　　　　　　　　　　　　　　　　Tyler B. Pensyl (Ohio Bar. No. 0080649)
　　　　　　　　　　　　　　　　　　　　　　Arryn K. Miner (Ohio Bar No. 0093909)
　　　　　　　　　　　　　　　　　　　　　　Vorys, Sater, Seymour and Pease LLP
　　　　　　　　　　　　　　　　　　　　　　52 East Gay Street
　　　　　　　　　　　　　　　　　　　　　　Columbus, Ohio 43216
　　　　　　　　　　　　　　　　　　　　　　Phone: (614) 464-6334
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (614) 719-5072
　　　　　　　　　　　　　　　　　　　　　　Email: wdklossjr@vorys.com
　　　　　　　　　　　　　　　　　　　　　　　　　　tbpensyl@vorys.com
　　　　　　　　　　　　　　　　　　　　　　　　　　akminer@vorys.com

　　　　　　　　　　　　　　　　　　　　　　Martha L. Fitzgerald, #14078
　　　　　　　　　　　　　　　　　　　　　　Brownstein Hyatt Faber Schreck, LLP
　　　　　　　　　　　　　　　　　　　　　　410 Seventeenth Street, Suite 2200
　　　　　　　　　　　　　　　　　　　　　　Denver, Colorado 80202-4432
　　　　　　　　　　　　　　　　　　　　　　Phone: (303) 223-1472
　　　　　　　　　　　　　　　　　　　　　　Email: mfitzgerald@bhfs.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs Otter Products, LLC and TreeFrog Developments, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on April 29, 2019. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*s/ Tyler B. Pensyl*
Tyler B. Pensyl
