**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

OTTER PRODUCTS, LLC, *et al.*,

    Plaintiffs,

v.

JESTIBO, LLC, *et al.*,

    Defendants.

Civil Action No.  18-cv-03133

**REPLY TO RESPONSE TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

### I. INTRODUCTION

Defendants Jestibo and Rami K. Merheb submit this Reply to the response by Plaintiffs Otter Products and Treefrog Developments opposing Defendants' motion to dismiss.

### II. STATEMENT OF RELEVANT FACTS

The only relevant portion of Plaintiffs' Statement of Facts was Section "D" discussing the "cease-and-desist letters" cited in the Amended Complaint for their tortious interference claim. Copies of relevant correspondences are attached as Exhibits A, B, C, and D to the Declaration of James Juo concurrently filed herewith, and the Court may consider these integral documents in deciding this motion. *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1156 (D. Colo. 2012); *see also* [ECF 28 at ¶¶ 162–168].

### III. ARGUMENT

#### A. The Unidentified Contracts and Authorized Sellers

Plaintiffs have not identified any specific contract or Authorized Seller in support of its claim for tortious interference. Plaintiffs instead argue that merely identifying "a class of contract" with unnamed Authorized Sellers is sufficient to state a claim for relief.

Plaintiffs rely on *Bus. Payment Sys., LLC v. Bus. Payment Sys.-Rocky Mountain, LLC*, No. 12-CV-01695-RBJ-KLM, 2013 WL 12192486 (D. Colo. Feb. 20, 2013) (applying New York law) in support of their position—but the complaint in that case specifically identified plaintiff's vendors who the defendant had "underhandedly entered into direct relationships with." *Id.* at *9.

Plaintiffs also rely on *Swingless Golf Club Corp. v. Taylor*, No. C 08-05574WHA, 2009 WL 2031768, at *4 (N.D. Cal. July 7, 2009), where a district court denied a motion to dismiss because the unidentified contracts "will be readily obtainable in discovery"—but this is inconsistent with *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009), where the U.S. Supreme Court held that "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Significantly, *Physicians Care All., LLC v. All Day Beauty, LLC*, No. 18-CV-2602-HRH, 2019 WL 176782, at *1 (D. Ariz. Jan. 11, 2019)—containing allegations strikingly similar to the instant case—declined to follow *Swingless* and this "class of contracts" argument. The Court noted that, with no identification of the specific contracts allegedly interfered with, "Plaintiff's allegations suggest that defendants interfered with every Authorized Seller contract, which seems implausible, particularly since plaintiff does not allege how many Authorized Sellers there are." *Physicians Care*, 2019 WL 176782, at *3. Moreover, "multiple district courts have set aside tortious interference with contract claims where no specific parties to the contracts were alleged." *Id*. (citation omitted); *see also ILS, Inc. v. WMM, Inc.*, No. 13-CV-00684-MSK-CBS, 2014 WL 4375890, at *8 (D. Colo. Sept. 4, 2014) (no tortious interference found where the complaint "discloses nothing about the term of any such contract"). Plaintiffs cannot state a claim for tortious interference with contract while keeping their contracts and Authorized Sellers a mystery.

### B.  Plaintiffs Stonewalled Defendants' Inquiry of the Alleged Contracts

Plaintiffs also argue that Defendants should have inquired about the contract, citing *Ramirez v. The GEO Grp., Inc.*, 655 F. Supp. 2d 1170 (D. Colo. 2009). But Defendants did so inquire after Plaintiffs gave notice of the alleged contracts on November 5, 2018 (a mere month before suit was filed), but were stonewalled by Plaintiffs who were only interested in Defendants' immediate capitulation.  Exhs. A, B, C and D.

In addition, Plaintiffs' reliance on *Mueller v. Swift*, No. 15-CV-1974-WJM-KLM, 2017 WL 2362137 (D. Colo. May 31, 2017), is misplaced because the relevant contract was identified in that case. The defendant in *Mueller* made statements that "[s]he wanted Mr. Mueller . . . to be fired"—from which a jury "could readily conclude that [defendant] intended to have Mueller's employment contract terminated." *Id.* at *8. Nothing so lucid has been alleged here.

Plaintiffs attempt to distinguish *Matrix Essentials* and the two *John Paul Mitchell* cases because they were not decided on the pleadings. But the legal proposition set forth in those cases—namely, general knowledge of the plaintiffs' distribution scheme does not equate to specific knowledge of the existence or contents of any agreement under that scheme—is applicable here where Plaintiffs merely have to plead facts rather than prove them. Yet Plaintiffs have steadfastly refused to specifically identify the alleged contracts or Authorized Sellers, and instead have decided to stand or fall on a hazy "class of contracts" for their distribution scheme.

### C.  Purchases of Plaintiffs' Products Do Not Injure Plaintiffs

Courts have expressed skepticism about whether a plaintiff could ever be injured from purchases of its own products, even within an exclusive distribution scheme. *See, e.g.*, *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 474 (S.D.N.Y. 2000)

("courts have been suspicious of the claim that disruption of these exclusive distribution arrangements causes any pecuniary injury"). Plaintiffs face a heavy burden to plead a plausible basis for damages under these circumstances, but have only made bare allegations of injury.

### D. The Competitor's Privilege Clearly Applies

The affirmative defense of "competitor's privilege" may be relied upon to grant a motion to dismiss "where that defense is clear from the face of the complaint." *Zimmer Spine, Inc. v. EBI, LLC*, 2011 WL 4089535, at *5 (D. Colo. Sep. 14, 2011) (granting a motion to dismiss based on the competitor's privilege defense). Here, the Amended Complaint asserts Defendants have engaged in unfair competition by purchasing Plaintiffs' products for resale.

Plaintiffs focus on "a wrongful motive" or purpose because there has been no wrongful conduct. Having simply purchased Plaintiffs' products on the open market, Defendants employed **no wrongful means**. Defendants' purpose in buying and selling Plaintiffs' products was to earn a profit like any other merchant, as they had done for years before receiving Plaintiffs' pretextual cease-and-desist letters. *See Manassas Travel, Inc. v. Worldspan, L.P.*, No. 07-CV-701, 2008 WL 1925135, at *3 (D. Utah Apr. 30, 2008) (defendants "acted, not with the deliberate intent to injure [the plaintiff], but to gain economic benefit"); *cf. Colo. Interstate Gas Co. v. Natural Gas Pipeline Co.*, 885 F.2d 683, 690 (10th Cir. 1989) (noting defendant was "motivated by a desire" to force plaintiff to relinquish a contractual right, which defendant then acquired). Plaintiffs' Amended Complaint alleges that Defendants have been selling Plaintiffs' products since at least 2017 [ECF 28 at ¶ 93], yet Plaintiffs only informed Defendants that this long-standing business practice allegedly interfered with unidentified contracts on November 5, 2018, just one month before Plaintiffs filed suit. If anything, it is Plaintiffs who are interfering with Defendants' business.

Case 1:18-cv-03133-RBJ   Document 37   Filed 05/13/19   USDC Colorado   Page 5 of 6

Plaintiffs misguidedly rely on *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006) (applying Oklahoma law) to justify attacking Defendants' motive and intent. In that case, however, defendant Hatfield "purchased Products using deceptive means, not the open market, relying on tortious acts like using a fake name and dishonestly stating that they operated a network of ten salons to purchase Products." *Id*. at 1237. No such wrongful means or actions have been alleged in this case.

Also, "[a]n essential requirement of a tortious interference claim against a competitor is that the contract in question was not terminable at-will." *GDHI Mktg., LLC v. Antsel Mktg., LLC*, No. 18-cv-02672-MSK-NRN, 2019 WL 851119, at *4 n.4 (D. Colo. Feb. 22, 2019); *cf. Nutting v. RAM Sw., Inc.*, 106 F. Supp. 2d 1121, 1129 (D. Colo. 2000) (noting the competitor's privilege "rests on the belief that competition is a necessary or desirable incident of free enterprise" (quoting Restatement (Second) of Torts §§ 768 cmt. e (1979))). Neither the Amended Complaint nor Plaintiffs' Response assert that the allegedly breached contracts were not "at will."

## IV.  CONCLUSION

Predicated on the purchase of Plaintiffs' products for resale, this tortious interference claim has nothing to do with quality control or counterfeit goods. Instead, Plaintiffs improperly seek to extinguish the area of competition that the first-sale doctrine is designed to preserve.

Respectfully submitted,

Date:  May 13, 2019

*s/ James Juo*
James Juo
THOMAS P. HOWARD, LLC
842 W. South Boulder Rd., Suite 100
Louisville, CO  80027

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 13, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will electronically send notice of such filing to attorney for Plaintiffs.

                                                    s/ James Juo
                                                    James Juo